IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELAINE BRUNSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:20-cv-00903-PX |
| | * | |
| PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS, | * | |
| | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination action are cross motions for summary judgment filed by Defendant Prince George's County Public Schools (ECF No. 36) and Plaintiff Elaine Brunson (ECF No. 19). The issues are fully briefed, and no hearing is necessary to resolve the motions. *See* D. Md. Loc. R. 105.6. For the following reasons, both motions are DENIED.

I.  BACKGROUND

   A.  Factual Background

Plaintiff Elaine Brunson worked as a school bus driver for Defendant Prince George's County Public Schools ("PGCPS"). ECF No. 41-3 at 1. On March 21, 2013, while Brunson was driving her usual bus route, a student physically attacked her. *Id.*; ECF No. 19-4 at 4–9. She sustained serious injury to her left elbow and spine. ECF No. 19-4 at 4–9. To this day, Brunson experiences chronic pain and muscle spasms associated with these conditions, making it difficult for her to reach and lift objects. She also has limited use of her left hand and arm. *Id.*; ECF No. 19-5 at 18–19.

Following the assault, PGCPS placed Brunson on paid "Assault Leave" from March 27,

2013, to April 18, 2014. ECF Nos. 36-2 at 5; 41-3 at 1, 11. When the leave period ended, PGCPS assigned Brunson to an administrative assistant position in the Transportation Department through a Transition Back to Work Program ("TTW") effective April 28, 2014. ECF No. 22-3.

Although PGCPS calls TTW a "program," it does not operate like one. PGCPS maintains no formal written description of the "program." There are no stated criteria for the "program," to include terms of eligibility, duration, or standards for admission. ECF Nos. 36-5 at 6–8; 41-3 at 244–46; 36-4 at 6. One person, Risk Management supervisor Phillip Hughes, singularly determines who obtains TTW and how long the employee is permitted to stay in TTW. ECF No. 41-3 at 244–46. Hughes describes TTW as a temporary placement of limited duration that is unavailable to employees who suffer from permanent medical restrictions. ECF No. 22-4. Hughes maintains that most employees transition out of TTW within 90 days "as a matter of practice," although he offers no evidence to corroborate this "practice." ECF No. 36-4 at 7.

Hughes assigned Brunson to the office of the Transportation Department when she returned to work on April 28, 2014. ECF No. 22-3. Brunson reported to Department of Transportation Communications Lead, Linda Miller, and assisted the Department in creating bus routes, answering parent questions, filing forms, and completing paperwork. ECF Nos. 36-2 at 6; 41-3 at 1; 22-3. PGCPS directed Brunson that by no later than June 9, 2014, she must provide medical documentation supporting that she could return to work as a bus driver. ECF No. 22-3.

As of June 9, 2014, however, Brunson had not received the requisite medical clearance to drive a bus. But she was fully able to continue as Administrative Assistant in the Transportation

2

Department.[1]  36-4 at 8–9.  PGCPS allowed Brunson to remain in that position and told her that if she needed, she could request "further work accommodation" after October 3, 2014.  ECF No. 22-3 at 3.

Although not totally clear whether Brunson formally asked to renew her position in the Transportation Department office, it is undisputed that she stayed on as an Administrative Assistant through the end of the school year (June 2015).  ECF No. 41-3 at 1, 242–46.  The reason for the continued placement, however, is hotly disputed.  Brunson maintains that PGCPS placed her in that position to reasonably accommodate her physical disabilities stemming from the attack.  ECF No. 41-3 at 1.  PGCPS, on the other hand, calls the position a "temporary placement" while she convalesced and that it never functioned as a new job position for Brunson.  ECF No. 36-4 at 4–7.

On March 31, 2015, Brunson's physician, after examination, found her spine and arm injuries to be permanent such that she could no longer safely drive a school bus.  ECF No. 22-7.  The doctor further concluded that the same physical limitations did not interfere with her ability to function as an Administrative Assistant.  *Id.*  Brunson next underwent an independent medical evaluation ("IME") at PGCPS' direction.  ECF No. 22-8.  The IME concurred with Brunson's doctor in all material respects.  *Id.*

Brunson completed the 2014–2015 school year working in the office for the Transportation Department.  ECF No. 36-4 at 8–9.  As the school year drew to a close, however, she sought clarification on next steps.  PGCPS at the time did not have any formal process for disabled employees to request accommodations other than to fill out a form "AP 4172" and submit for consideration.  *See* ECF Nos. 36-5 at 6–8; 22-5; 41-3 at 220–21; *see also* ECF No. 19-

---

[1] Though the record is unclear on this point, it appears that Brunson was on medical leave between June and August of 2014.  ECF Nos. 22-3 at 3; 36-2 at 6.

3

8 (explaining the AP 4184 process for employees with permanent medical restrictions went into effect on February 1, 2017 with no prior versions).

Accordingly, on May 27, 2015, Brunson wrote PGCPS Chief Executive Officer, Kevin Maxwell, and multiple PGCPS administrators inquiring about her employment status.[2] ECF No. 41-3 at 11–15.  Among other things, Brunson conveyed that as a result of her injuries, she could not drive a bus, but she could continue her administrative duties in the Transportation Department.  *Id.*  She also made it known that she wanted to remain in her current position in the Transportation Department or stay with PGCPS in a like kind position.  *Id.* at 14.

Shortly thereafter, on June 16, 2015, Brunson filed a "Discrimination or Harassment Incident Report" with the PGCPS Board of Education, Employee, and Labor Relations Office ("Labor Relations Office") alleging discriminatory treatment in the Transportation Department. ECF Nos. 41-3 at 3; 19-6 at 9.  Within a week after lodging her complaint, on June 22, 2015, Miller told her to "go home" and "don't come back."  ECF No. 41-3 at 3; *see also* ECF No. 41-3 at 18.  Miller further told her that the Transportation Department had no work for her that summer.  ECF No. 41-3 at 3; *see also* ECF No. 41-3 at 18.  When she contacted Human Resources, no one would discuss her situation in light of her pending complaint with the Labor Relations Office.  ECF No. 41-3 at 4–5.

Three days later, on June 25, 2015, then Equal Employment Opportunity ("EEO") representative, Amana Simmons, met with Brunson and her union representative, Angie Thomas, to discuss her concerns about her work environment and her desire to remain in the Administrative Assistant position.  ECF Nos. 36-5 at 9; 41-3 at 4.  According to Simmons, she

---

[2] Brunson copied Dr. Segun Eubank, Shirley Kirkland, Angela Thomas, and James C. Strouse on the email. ECF No. 41-3 at 15.

emphasized that the Administrative Assistant position was temporary until an employee could return to her original position and was not an available accommodation. ECF No. 41-3 at 97. Simmons maintains that she told Brunson she must fill out an AP 4172 if she wished to seek formal accommodations for her disability, but that Brunson was not interested. *Id.* Rather, Brunson wanted to apply for a secretary position which was considered a promotion and thus not proper for reassignment. ECF Nos. 36-5 at 9–10; 41-3 at 97–98, 111–14.

Brunson attests to a very different meeting. Brunson recalls that she met one-on-one with Simmons. ECF No. 41-3 at 4. She told Simmons about being fired and that she expressly requested the accommodation of either staying in her current position or being reassigned to a suitable vacant position. *Id.* at 4–6. Brunson also never received any information about submitting an accommodation form and was instead told to apply for open administrative assistant positions through the school's competitive process using an online portal, although she had no access to the portal as a current employee. *Id.* at 4–5.

Finding the meeting with Simmons an exercise in futility, Brunson commenced an email writing campaign. On July 7, 2015, Brunson contacted Hughes in Risk Management to relay that she was "ready, willing and able to continue [] work for PGCPS Transportation." ECF No. 41-3 at 37. Brunson also states she supplied Hughes with her resume on August 18, 2015, so he could aid her in finding a reassignment. ECF No. 41-3 at 6. Hughes replied on August 20, 2015, informing Brunson that she was "no longer eligible to participate in the Transition to Work Program since this program is intended for employees with temporary medical restrictions" and that her case had been referred to Human Resources. ECF No. 36-11.

Brunson also contacted Nicole Eubanks in Human Resources on August 21, 2015, for guidance on returning to work for the 2015–2016 school year. ECF No. 36-12. Eubanks

5

presented Brunson with two options: return as a bus driver or request leave to remain in a positive employment status. *Id.*

On September 21, 2015, Brunson contacted her union representative, James Spears, expressing her desire to continue working at PGCPS and for assistance in obtaining leave. ECF No. 36-13. Spears responded that because Brunson could not drive a bus any more, she needed to "seek another position . . . if retirement is not an option." ECF No. 36-14. Brunson also contacted EEO officer Simmons on September 22, October 22, November 4, and December 1, 2015, to learn the status of her labor relations complaint for which Simmons was responsible for investigating. ECF No. 41-3 at 44–48.

In the interim, PGCPS asserts that it had placed Brunson on a leave with pay status. ECF Nos. 41-3 at 211–15; 22-9. According to PGCPS, Brunson requested to be on leave during this time, but Brunson denies making such a request. ECF No. 41-3 at 7–8, 212–18. Brunson, however, applied for and received unemployment insurance benefits on account of her termination. ECF No. 41-3 at 16–23. And while PGCPS appealed the award, Brunson ultimately prevailed, precisely because the unemployment office found that PGCPS had terminated her in June of 2015. ECF No. 41-3 at 18–19. PGCPS did not formally remove Brunson from its rolls until June 20, 2017. ECF Nos. 36-18; 41-3 at 172–73; 36-15.

In February 2017, PGCPS also implemented a formal accommodations process, Administrative Procedure 4184 ("AP 4184"). ECF No. 22-6. AP 4184 now required that any employee who cannot perform her essential job functions "with or without accommodations" to participate in an elections conference to discuss alternative placement or separation from employment. *Id.* The procedure also forewarns that failure to participate in the conference or make an "election" would result in the employee's termination. *Id.* at 4. Last, AP 4184

identifies submission of an AP 4172 accommodations request as a "related procedure." *Id.* at 6.

After a lengthy period of silence between Brunson and PGCPS, the District notified her on May 12, 2017, that she would be required to attend an elections conference pursuant to AP 4184. ECF No 36-17. The conference was scheduled for June 2, 2017, and Brunson did not appear. ECF No. 36-18. On June 20, 2017, PGCPS sent Brunson a formal letter of termination. *Id.*

### B. Procedural History

On April 5, 2016, Brunson filed a discrimination charge with the Equal Employment Opportunity Commission. ECF No. 36-16. Shortly thereafter, Brunson received her Notice of Right to Sue. ECF No. 41-3 at 9. On January 24, 2020, Brunson filed a complaint in the Circuit Court for Prince George's County, Maryland, alleging one count of failure to provide reasonable accommodation and one count of discriminatory and retaliatory discharge, both in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). ECF No. 1-2. PGCPS removed the case to this Court on April 6, 2020. ECF No. 1. On May 13, 2020, PGCPS answered the Complaint. ECF No. 10.

On June 11, 2021, before discovery concluded, Brunson filed a partial motion for summary judgment as to her failure to accommodate claim and discriminatory discharge claim. ECF No. 19-9 at 1–2. On December 28, 2021, PGCPS filed a cross motion for summary judgment as to Brunson's claims in their entirety. ECF No. 36.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322. "Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### III. ANALYSIS

#### A. Failure to Accommodate

Brunson first alleges that PGCPS violated the ADA by failing to accommodate her physical disabilities arising from the 2014 assault. ECF No. 19-9 at 1–2. PGCPS argues that summary judgment is warranted because Brunson had not sought a reasonable accommodation or engaged in the accommodations process. ECF No. 36-1 at 13–15. Brunson, on the other hand, urges summary judgment in her favor because PGCPS undisputedly terminated her from a position that evidently had accommodated her disabilities for nearly a year. ECF No. 19-9 at 12–15. For the following reasons, genuine issues of disputed fact preclude summary judgment for either party.

The ADA obligates employers to provide reasonable accommodation for an employee's known disabilities. 42 U.S.C. § 12112(b)(5)(A); *Shin v. Univ. of Md. Med. Syst. Corp.*, 369 F. App'x 472, 479 (4th Cir. 2010) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a prima facie case for failure to accommodate, the plaintiff must show that (1) she is an individual who had a disability otherwise qualified for her position,[3] (2) the employer had notice of her disability, (3) with reasonable accommodation she could perform the essential functions of the position, and (4) that the employer refused to make such accommodations. *Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). To survive summary judgment, the plaintiff need only show that an accommodation request seems "reasonable on its face." *Reyazuddin v. Montgomery Cnty.,* 789 F.3d 407, 414 (4th Cir. 2015) (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002)). Then the

---

[3] The term "disability" is defined as (1) a physical or mental impairment that substantially limits one or more major life activities of such individual, (2) a record of such impairment, or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1).

9

burden shifts to the employer to show "special (typically case-specific) circumstances" that visit on it an "undue hardship." *Id.*

It is undisputed that Brunson could not return to work as a bus driver on account of her permanent injuries to her neck and elbow. But record evidence demonstrates that she could perform the related office work in the Transportation Department. Thus, this dispute centers on whether PGCPS' placement in the Transportation Department could constitute a reasonable accommodation such that her unilateral termination constitutes a violation of the ADA.

Although reasonable accommodation under the ADA may include reassigning the employee to a new position, it is indeed an accommodation of "last resort" reserved for "unusual circumstances." *Elledge v. Lowe's Home Cntrs., LLC*, 979 F.3d 1004, 1014 (4th Cir. 2020). An employer is not required to create a new position for an employee where one does not exist. *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959–60 (4th Cir. 2021). Nor must an employer place an employee in a position for which is she is not qualified to perform the essential or fundamental functions of the job. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 98 (2d Cir. 2009) (collecting cases); *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 107–08 (D. Md. 2019) (quoting *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1344 (11th Cir. 2016)); *see also* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(1). But where reassignment to a lateral position is available, and the employee can no longer perform her prior job, the placement may be considered as a reasonable accommodation. *See Madison v. Hous. Auth. of Baltimore City*, No. RDB-21-997, 2021 WL 2936321, at *3–4 (D. Md. July 13, 2021); *Easton v. Aberdeen Police Dep't*, No. SAG-19-3650, 2020 WL 6390656, at *1 (D. Md. Oct. 27, 2020) (quoting *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 633 (6th Cir. 1999)); *Fortino v. Village of Woodridge*, No. 17 C 5037, 2018 WL 1695363, at *4 (N.D. Ill. Apr. 7, 2018) (rejecting

dismissal of failure to accommodate claim when permanently disabled police officer identified vacant "non-patrol" or "inactive" positions in police department as desired reassignments); *Mack v. Chicago Transit*, No. 17-cv-06908, 2020 WL 6545039, at *5 (N.D. Ill. Nov. 6, 2020) (rejecting dismissal of failure to accommodate claim when employer refused to reassign bus driver with vision impairment to available non-driving vacancy); *see also Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000) (reversing summary judgment when issue of fact existed as to whether employer could have reassigned employee to identified vacant positions for which employee asserted she was qualified).

PGCPS vigorously maintains that the Administrative Assistant position was a temporary "light duty" spot offered to Brunson until it could be determined whether she would return as a bus driver or take another available offramp such as retiring or resigning. ECF No. 36-1 at 13. Thus, says PGCPS, it had not been required to extend her placement in the "TWW program," as it was meant only to provide interim light duty employment. *Id.*; *see Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) ("[T]he ADA does not require an employer to reallocate essential job functions or assign an employee 'permanent light duty.'"); *see also Boone v. Bd. of Governors of Univ. of N.C.*, No. 19-1758, 2021 WL 2396228, at *1 (4th Cir. June 11, 2021) (per curiam) (citing *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683,687 (4th Cir. 1997)) (permanent light duty assignment not reasonable accommodation when other employees would need to cover disabled employee's duties for unspecified period). Brunson, in response, maintains that the Administrative Assistant position had been offered as an accommodation under the ADA, and so taking it away from her constitutes a denial of such accommodation as a matter of law. ECF No. 19-9 at 12–16.

On this record, the Court cannot discern the true nature of Brunson's assignment to the

Transportation Department such that summary judgment is proper for either party. Although PGCPS argues that Brunson had been placed in the position as part of a temporary light duty "program," the record barely sustains that contention. No written policies, procedures or protocols exist for the TTW "program." ECF Nos. 36-4 at 4–7; 36-5 at 6–8. Further, although Hughes testified that employees may participate in TWW for no more than 90 days and only until the employee can return to her original job, ECF No. 36-4 at 7, PGCPS deviated from the stated criteria significantly. Brunson remained in the Administrative Assistant position for the better part of a school year, subject to several "renewals" that had not been based on any discernable criteria. ECF Nos. 22-3; 41-3 at 242–46. The Court simply cannot conclude that as a matter of law the Administrative Assistant position amounted to a temporary "light duty" placement as part of some preexisting program.

More to the point, a reasonable factfinder could conclude that PGCPS had placed Brunson in a supportive role to the bus drivers to accommodate her disability. For one, PGCPS invited Brunson to request extending her time as an Administrative Assistant should she need "further work accommodation." ECF No. 22-3 at 3. And as an Administrative Assistant, Brunson arguably used many of the same essential job skills as that of a bus driver. She needed to know school bus routes; she had to interact with parents and students, and she had participated in documenting incidents that occurred during transport. ECF No. 36-2 at 6. On this record, a reasonable factfinder could conclude that PGCPS had placed Brunson in the Transportation Department to accommodate her disability.

PGCPS next flips the script. It argues that because Brunson failed to identify an appropriate *vacant* position going forward as a reasonable accommodation, then the denial of accommodations claim must fail. ECF No. 36-1 at 14. Certainly, Brunson had been working in

what appeared to be a suitable position as an Administrative Assistant in the Transportation Department. Her request to continue working in the same vein, viewed most favorably to her, constitutes a satisfactory request for accommodation through a new placement. *See Wilson*, 717 F.3d at 346–47 (interactive process triggered when employee "communicates to his employer his disability and desire for an accommodation for that disability."). PGCPS placed her in the position on account of her disabilities that rendered her unable to drive a bus. Thus, it makes little sense that Brunson would have to do anything more to "identify" a vacant spot to secure a reasonable accommodation—she made clear she wanted the spot she had already been given, or something like it. And the record supports that multiple administrative assistant positions were vacant and available. ECF No. 41-3 at 26–36.

Nor does PGCPS' contention that the claim fails because Brunson wanted a "promotion" warrant summary judgment. Brunson's liability theory is simple. She wanted to continue in an administrative assistant job akin to that which she had been given for nearly a year. PGCPS is not contending that Brunson failed to do the job, or contesting that the job used similar skills to that required for a bus driver. On this record, the Court cannot conclude as a matter of law that her request for a future similar position amounts to her asking for a promotion. *Compare* ECF No. 41-3 at 97–98 (placement as a secretary considered a "promotion") *with* 109–10 (confessing ignorance on any pay differential). The trier of fact must resolve whether Brunson's request to continue working in a spot similar to her job in the Transportation Department constituted a request for reasonable accommodation such that PGCPS' termination of Brunson amounts to a violation of the ADA.

Lastly, PGCPS argues that the accommodations claim fails as a matter of law because Brunson did not engage in the interactive accommodations process. ECF No. 36-1 at 13–14. No

doubt, an employee must first ask for a reasonable accommodation if she wants to claim later that she was denied one. *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015); *see also Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005) ("Implicit in the fourth element [of a plaintiff's prima facie failure to accommodate case] is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation."). This requirement ensures that the employer is sufficiently placed on notice of the employee's stated needs. *Wilson*, 717 F.3d at 346–47. But no "magic words" are necessary to initiate this process. *Parkinson v. Anne Arundel Med. Ctr.*, 79 F. App'x 602, 604–05 (4th Cir. 2003) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)) ("Of course, a request for accommodation need not, in all cases, be in writing, be made by the employee, or formally invoke the magic words reasonable accommodation.") (internal quotation marks omitted). Where an employee "communicates to his employer his disability and his desire for an accommodation," this is enough to trigger the employer's duty to engage in the interactive process. *Wilson*, 717 F.3d at 346–47; *see also Crabill*, 423 F. App'x at 323 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996)) ("No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.").

Despite this forgiving standard, PGCPS maintains that Brunson failed to engage in the accommodations process because she did not fill out the AP 4172 or specifically identify a vacant position. ECF Nos. 36-1 at 14–15. The Court rejects PGCPS' overly restrictive view of the facts and the law. Record evidence supports that Brunson repeatedly requested that she remain in an administrative position like that which she had in the Transportation Department. On May 27, 2015, for example, Brunson specifically asked to be kept in the Transportation

Department given that she could not return to driving a bus. ECF No. 41-3 at 11–15. She stressed that she "should not be fired nor let go because [I] no longer can do [my] previous job . . . I need and want my job with PGCPS." *Id.* Brunson next contacted multiple individuals across several departments expressing her desire to work despite her disabilities. On June 25, 2015, she met with Simmons and expressed a desire to continuing working for PGCPS. ECF Nos. 36-5 at 9–10; 41-3 at 4–5. She repeated the same in her August 20, 2015 email to Hughes and asked about "reporting to duty for this school year." ECF No. 22-10. Viewing the record most favorably to Brunson, she sufficiently engaged PGCPS in the interactive process such that the claim must survive.

As to Brunson's motion for summary judgment on this claim, it too must be denied. Viewing the facts most favorably to PGCPS, the Court cannot definitively conclude that the TWW position was PGCPS' attempt to provide a reasonable accommodation under the ADA. If Hughes and Simmons are believed, the TWW placement operated solely as a stopgap for Brunson until she healed, and Brunson refused to engage in the interactive process. ECF Nos. 36-5 at 9; 22-4. According to Simmons, Brunson was "not interested" in pursuing the accommodations process but rather wanted placement in a secretarial position—a placement that PGCPS steadfastly maintains Brunson lacked qualification. ECF Nos. 36-5 at 9–10; 41-3 at 229–30. To resolve these heated factual disputes, the accommodations claim must proceed to trial. The cross motions on this claim are denied.

### B. Discriminatory Discharge

The parties next cross move for summary judgment on Brunson's discriminatory discharge claim. ECF Nos. 36-1 at 18; 19-9 at 16. To establish this claim, Brunson must show she was among the protected class under the ADA who was fulfilling her employer's legitimate

15

expectations and was terminated in a manner that raises a reasonable inference of discrimination. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2004) (citing *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001)).

PGCPS first argues that Brunson was not in an ADA protected class because, as a result of her injuries, she could no longer drive a bus; thus, she could not perform the essential functions of her job with or without reasonable accommodation. ECF No. 36 at 18. But this argument is circular. As already explained, a genuine factual dispute exists as to whether she *could* perform such essential job functions with the reasonable accommodation of working in the Transportation Department. Because a reasonable trier of fact could conclude that placement as an Administrative Assistant in the Transportation Department permitted her to perform her essential job functions, then the same conclusion could support that she was "qualified" under the ADA. *See* 42 U.S.C. § 12111(8) (A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position."); *see also EEOC v. Denny's, Inc.*, No. WDQ-06-2527, 2010 WL 2817109, at *6 (D. Md. July 16, 2010) (summary judgment denied when parties disagreed about job's essential functions and whether plaintiff was qualified to perform them).

PGCPS next argues that Brunson "has offered no evidence whatsoever to even suggest, let alone establish a discriminatory animus on behalf of Defendant." ECF No. 36-1 at 19. Brunson rightfully retorts that a trier of fact could conclude that no reason other than discrimination explains the Defendant's behavior. ECF No. 41 at 23. More to the point, a most favorable view of the record reflects that PGCPS had placed Brunson in a position which arguably accommodated her disabilities, only to abruptly remove her when it no longer suited the defendant's purpose. PGCPS next offered an array of "reasons" for her termination which on

their face, make little sense. PGCPS for example, maintains she had been terminated for failure to fill out an accommodations form, ECF No. 19-6 at 6, yet she had asked for accommodations in many other ways. ECF Nos. 36-1 at 18–19; 41-3 at 3–6, 11–15. Likewise, PGCPS claims Brunson had been terminated for missing an elections conference—two years after her direct supervisor told her, without warning, to leave because there was no more work for her, and never paid her again. ECF Nos. 36-1 at 18–19; 41-3 at 7–8, 18–25; 36-15. On this record, PGCPS' shifting approaches to Brunson's employment status could support a finding that she had been terminated on account of her disability.

But at the same time, viewing the record most favorably to PGCPS, the Court cannot grant summary judgment in Brunson's favor on this claim. Brunson maintains that her "termination" from the Administrative Assistant position constitutes discriminatory discharge as a matter of law. ECF No 19-9 at 17–18. Record evidence, if believed, demonstrates otherwise. Hughes and Simmons both testified that the TWW placement, regardless of how long it lasted, was never meant to be an "accommodation" under the ADA. ECF Nos. 36-4 at 7–9; 36-5 at 11–12. Rather, it was a temporary assignment offered until Brunson could return to work as a bus driver. *Id.* PGCPS still maintains that Brunson was fired because she failed to engage in the interactive process or the elections process such that it had no reasonable means to offer Brunson either an accommodation or a new placement. ECF No. 36-5 at 17–18; 36-18. These disputed facts make the claim incapable of resolution at summary judgment.

### C. Retaliatory Discharge

The Court lastly turns to Brunson's retaliatory discharge claim for which only PGCPS seeks summary judgment. ECF Nos. 36-1 at 18–19; 19-9 at 20. An employer is liable for retaliation where an employee demonstrates that she (1) engaged in a protected activity; (2) the

employer took adverse employment action against her; and (3) a causal connection exists between the two. *Smith v. CSRA*, 12 F. 4th 396, 416 (4th Cir. 2021). In a nutshell, PGCPS maintains the record indisputably shows it "offered a legitimate, non-discriminatory reason" for firing Brunson, namely that she did not post for her 2017 elections conference and did not fill out its special form, the AP 4172. ECF No. 36-1 at 18–19; 19-6 at 5–6. At best, PGCPS' stated reasons for termination just gives the jury something to talk about. Perhaps the jury will conclude that Brunson really was terminated because she failed to fill out a particular form, or because she wanted a promotion that did not exist. But the record also supports that as soon as Brunson filed her labor relations action and complained to Chief Executive Officer Maxwell about PGCPS' failure to accommodate her injuries, she was told to "go home" because the Transportation Department had no work. ECF Nos. 41-3 at 2–3; 18. Contrary to PGCPS' contentions, this "mere temporal proximity," supports the inference that she had been terminated for taking formal action opposing her denial of accommodations—actions squarely protected under the ADA. For this reason, summary judgment is denied as to the retaliation claim.

### IV.   Conclusion

For the foregoing reasons, both motions for summary judgment are denied. A separate order follows.

<u>March 9, 2022</u>　　　　　　　　　　　　　　　<u>　　　/s/　　　　　　　　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　　　Paula Xinis
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge